ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
GINA SZETO-WONG   10515
JONATHAN M.F. LOO   10874
KEVIN A. YOLKEN     10987
820 Mililani Street, Suite 502
Honolulu, Hawaii 96813
Telephone:  (808) 533-7434
Facsimile:   (808) 545-3608
E-mail(s):   eseitzatty@yahoo.com
             szetogina@gmail.com
             jloo33138@yahoo.com
             kevinyolken@gmail.com

Attorneys for Plaintiff
HANNAH DAVID

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | | |
|---|---|---|
| HANNAH DAVID,  Individually and on behalf of her minor daughter , B.D, | ) ) ) | CIVIL NO. 20-00002 JMS-WRP (Other Civil Action) |
| | ) | |
| Plaintiff, | ) ) | FIRST AMENDED VERIFIED COMPLAINT FOR DECLARA- |
| vs. | ) ) | TORY AND INJUNCTIVE RE- LIEF AND DAMAGES; VERI- |
| PANKAJ BHANOT,  DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES,  STATE OF HAWAII;  AIMEE LESKOVIC; SHAWN  LATHROP; IWALANI KAAUWAI-HERROD;   PENNY CHO;  DINO ST. AUGUSTINE; GINA   KAULUKUKUI; WILLIAM | ) ) ) ) ) ) ) ) ) | FICATION  OF  HANNAH DAVID |

*(CAPTION CONTINUED ON NEXT PAGE)*

KEAHIOLALO; SHAYLENE            )
ISERI; JANE and/or JOHN          )
DOES 1-25, and DOE EN-           )
TITIES 1-10,                     )
                                 )
                Defendants.      )
_____)

## FIRST AMENDED VERIFIED COMPLAINT FOR DECLARA-
## TORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiff HANNAH DAVID, Individually and on behalf of her minor

daughter, B.D., [hereinafter "Plaintiff"], by and through her undersigned attorneys,

alleges as follows:

## INTRODUCTION

1)     This is an action for declaratory and injunctive relief and

damages arising from Defendants' deliberate, knowing, and malicious conspiracy to

kidnap Plaintiff's eleven year old daughter B.D. from her school on the Island of

Hawaii, deliver B.D. to her natural father on the Island of Kauai in violation of a

valid Family Court Order providing full physical and legal custody to Plaintiff with

no visitation rights to the father, and refusal to allow Plaintiff to see or communicate

with B.D. for over two weeks without any judicial authority, sanction, review, or

justification and in clear and deliberate violation of the civil and custodial rights and

well-being of Plaintiff and B.D.

## PARTIES

2)      Plaintiff is and has been a citizen and resident of the County of Hawaii, State of Hawaii, at all times pertinent hereto.

3)      Plaintiff is the mother and sole custodial parent and legal guardian of her minor daughter, B.D., born December 3, 2008.

4)      Defendant PANKAJ BHANOT [hereinafter "Defendant Bhanot"] is and has been a citizen and resident of the City and County of Honolulu, State of Hawaii, at all times pertinent hereto, and is employed as the Director of the Department of Human Services, State of Hawaii, which includes Child Protective and/or Welfare Services.  Defendant Bhanot is sued herein only in his official capacity.

5)      Plaintiff is informed and believes, and thereupon alleges, that Defendants  AIMEE LESKOVIC [hereinafter "Defendant Leskovic"], PENNY CHO [hereinafter "Defendant Cho"], and SHAWN LATHROP [hereinafter "Defendant Lathrop"] are and have been citizens and residents of the County of Hawaii, State of Hawaii, at all times pertinent hereto, and are employed by the State of Hawaii, Department of Human Services, in Kailua-Kona with West Hawaii Child Welfare Services.  Defendants Leskovic, Cho, and Lathrop are sued herein in both their individual and their official capacities.

3

6)      Plaintiff is informed and believes, and thereupon alleges, that Defendants  IWALANI KAAUWAI-HERROD [hereinafter "Defendant Kaauwai-Herrod"] and DINO ST. AUGUSTINE [hereinafter "Defendant St. Augustine"], are and have been citizens and residents of the County of Kauai, State of Hawaii, at all times pertinent hereto, and are employed by the State of  Hawaii, Department of Human Services, Child Welfare Services, in Lihue.  Defendants Kaauwai-Herrod and St. Augustine are sued herein in both their individual and in their official capacities.

7)      Defendant WILLIAM KEAHIOLALO [hereinafter "Defendant Keahiolalo"] is and has been a citizen and resident of the County of Kauai, State of Hawaii, at all times pertinent hereto, and is the natural father of B.D.  Defendant Keahiolalo is sued herein in his individual capacity.

8)      Defendant SHAYLENE ISERI [hereinafter "Defendant Iseri"] is and has been a citizen and resident of the County of Kauai, State of Hawaii, at all times pertinent hereto, and is the former Prosecuting Attorney for the County of Kauai and currently an attorney in private practice.  Defendant Iseri is sued herein in her individual capacity.

9)      Plaintiff is informed and believes, and thereupon alleges, that Defendant GINA KAULUKUKUI [hereinafter "Defendant Kaulukukui"] is and has been a citizen and resident of the County of Kauai, State of Hawaii, at all times

pertinent hereto, and is employed by the Kauai County Police Department. Defendant Kaulukukui is sued herein in her individual capacity.

10)     Defendants JOHN and/or JANE DOES 1-25 and DOE ENTITIES 1-10 [hereinafter "Doe Defendants"] are associates, officers, employees, agents, and/or representatives of the named Defendants whose true names and capacities are as yet unknown to Plaintiff and her attorneys despite due diligence and inquiry and who acted herein with or on behalf of the named Defendants as set forth below.  The true names and capacities of the Doe Defendants will be substituted as they become known.  The Doe defendants are sued both in their individual and their official capacities.

## JURISDICTION AND VENUE

11)     This Court has original jurisdiction to hear this matter pursuant to 28 U.S.C. Section 1331 and 1343 *inter alia*.  Any and all state law claims contained herein are part of the same case or controversy giving rise to the federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367.

12)     Venue is proper in the United States District Court for the District of Hawai`i pursuant to 28 U.S.C. Section 1391 as all Defendants to the litigation reside in the state of Hawai`i, and all actions and/or omissions giving rise to the claim occurred and continue to occur in the state of Hawai`i.

## FACTUAL ALLEGATIONS

13)     Plaintiff is the natural mother of B.D., who is eleven years old.

14)     Defendant Keahiolalo admitted paternity and is the natural father of B.D.

15)     Prior to B.D.'s birth, then seventeen-year-old Plaintiff attempted to file rape charges against Defendant Keahiolalo with the Kauai County Office of Prosecuting Attorney alleging that Defendant Keahiolalo – who is twenty years older, was married with two children, and had been stalking Plaintiff – impregnated Plaintiff without her agreement or consent.

16)     The then Kauai County Prosecuting Attorney, Defendant Iseri, declined to file any charges against Defendant Keahiolalo.

17)     After the birth of B.D., Plaintiff and Defendant Keahiolalo engaged in prolonged and bitter litigation in the Family Court of the Fifth Circuit, State of Hawaii, amid allegations, inter alia, that Defendant Keahiolalo sexually abused B.D. by touching her vagina.

18)     In order to avoid an evidentiary hearing on the custody and abuse allegations, Defendant Keahiolalo contacted Plaintiff's lawyer and agreed to stipulate to any and all of the Plaintiff's demands with regard to the custody of B.D.

19)     Accordingly, in a Stipulation filed in the Family Court of the Fifth Circuit, State of Hawaii, on February 14, 2012, Plaintiff and Defendant

Keahiolalo agreed and the Court ordered that Plaintiff have full legal and physical custody of B.D., that Keahiolalo have no rights to visitation with B.D., that Keahiolalo stay away from and have no contacts whatsoever with Plaintiff and B.D., that Keahiolalo provide child support and health insurance for B.D., and allowed Plaintiff to remove B.D. from the jurisdiction at Plaintiff's sole discretion.

20) The aforementioned Stipulation entered on February 14, 2012, has never been amended, modified, or vacated, and remains in full force and effect.

21) From February, 2012, up to and until late November, 2019, B.D. had virtually no contacts with Defendant Keahiolalo.

22) On or about November 28, 2019, Plaintiff traveled with B.D. from Kona to Kauai to spend the Thanksgiving holiday with Plaintiff's mother and other relatives.

23) The day after Thanksgiving B.D. participated in a modeling show at a local shopping center.

24) During the show, Plaintiff felt a tap on her shoulder and turned around to find Defendant Keahiolalo there with his two minor daughters.

25) Plaintiff was shocked, frightened, and angry to see Defendant Keahiolalo in close proximity, in direct and deliberate violation of the 2012 Stipulation, and ordered him to stay away and leave.

26)     Despite Plaintiff's angry reaction, Defendant Keahiolalo did not leave and continued to follow Plaintiff and B.D., encouraged his daughters to approach B.D., and videotaped the children's interactions.

27)     On the following day, Plaintiff took B.D. to Defendant Keahiolalo's work place and demanded that he apologize to B.D., which he refused to do.

28)     In her state of extreme anger, Plaintiff then proceeded to yell and swear at Defendant Keahiolalo, taunt and push him – all on videotape – until the police arrived and arrested Plaintiff on misdemeanor charges of harassment and third degree assault.

29)     After Plaintiff had posted bail, she and B.D. returned home to Kona where B.D. resumed attendance at the Waikaloa Elementary and Middle School where she has been enrolled for the past few years.

30)     Plaintiff is informed that on December 2, 2019, Defendant Keahiolalo met with Defendant Kaulukukui from the Kauai County Police Department.

31)     Thereafter, Defendant Kaulukukui proceeded to draft a petition for a protective order on behalf of Defendant Keahiolalo and prepared the petition for filing with the court.

32)     Plaintiff is informed and believes, and thereupon alleges, that on December 4, 2019, using a document prepared for him by Defendant Kaulukukui, Defendant Keahiolalo applied for and obtained a temporary restraining order against Plaintiff David from the Family Court of the Fifth Circuit, State of Hawaii, in which Keahiolalo purported to represent the interests of B.D.

33)     In his application for a restraining order, Defendant Keahiolalo knowingly and intentionally omitted mention or reference to and failed to advise the Court of the Stipulation and Order dated February 14, 2012, that deprived him of all legal and custodial rights to B.D.

34)     Plaintiff is informed and believes that had the presiding judge in the Family Court been informed of the Stipulation and Order dated February 14, 2012, Defendant Keahiolalo's application for a temporary restraining order would not have been granted as to B.D.

35)     Nevertheless, the temporary restraining order obtained by Defendant Keahiolalo on December 4, 2019, does not address any custodial issues and did not, directly or indirectly, authorize Keahiolalo to obtain or receive custody of B.D.

36)     Plaintiff is informed and believes, and thereupon alleges, that Defendant Kaulukukui acted in concert with Defendants Kaauwai-Herrod, Leskovic, and Cho, among others, to file and serve the petition in the family court,

to provide Defendant Keahiolalo with advice enabling him to obtain the protective order and thus circumvent the existing Stipulation and Order regarding custody of B.D., and to orchestrate and carry out the seizure of B.D. and placement with Defendant Keahiolalo without any authority to do so.

37)     Plaintiff is informed that on December 16, 2019 and December 17, 2019—while actively conspiring with several of the Defendants to seize B.D. from her school—Defendant Lathrop was explicitly made aware through text message communications with Defendant Keahiolalo about the 2012 Stipulation and Order in which Plaintiff was granted full custody of B.D.

38)     Likewise, on or about December 18, 2019, Defendant Leskovic interviewed Plaintiff at Plaintiff's residence during which Plaintiff informed Leskovic of the 2012 Stipulation and Order giving Plaintiff full legal and physical custody of B.D.

39)     Despite Defendant Leskovic and Defendant Lathrop having been informed of the 2012 Stipulation and Order giving full custody of B.D. to Plaintiff, on December 20, 2019, Defendants Leskovic, Cho, and two as yet unidentified police officers appeared at B.D.'s school and demanded that B.D. accompany them to be placed in the custody of Defendant Keahiolalo who was waiting nearby.

40)     Plaintiff is informed that Defendant Keahiolalo had been in communication with Defendants St. Augustine and Lathrop, among others, who

conspired together to arrange for the seizure of B.D. in a manner that would involve "[n]o processing.  A grab and go."

41)    Plaintiff  is informed that for several days prior to the seizure of B.D. Defendants worked in concert to effectuate the seizure through active surveillance of the Plaintiff and her movements and by coercing cooperation and assistance from police officers who initially—and rightfully—refused to assist because they did not have any legal authority.

42)    Plaintiff is informed and believes, and thereupon alleges, that no court orders or other documents ever were delivered or presented to B.D.'s school authorizing Defendants Leskovic, Cho, Keahiolalo, and/or the police officers to take custody of B.D.

43)    Plaintiff is informed and believes, and thereupon alleges, that teachers and other persons who sought to inquire or intervene in B.D.'s behalf were instructed not to become involved.

44)    Plaintiff is informed that after Defendants seized B.D. from her school Defendant Keahiolalo was given custody and told by Defendants to take B.D. and immediately leave the school to avoid any encounter with the Plaintiff.

45)    Defendant Cho then escorted Defendant Keahiolalo and B.D. directly to the airport and past airport security, and B.D. was taken to Kauai.

46)     After B.D. was taken and placed into the custody of Defendant Keahiolalo the police then appeared at Plaintiff's residence in Kona, informed Plaintiff of the seizure of her daughter, and purported to serve Plaintiff with a temporary restraining order from the Family Court of the Fifth Circuit requiring Plaintiff to appear at a hearing on December 31, 2019.

47)     Following the seizure of B.D. on December 20, 2019, Plaintiff and her attorney made multiple efforts to contact the Child Welfare Services offices (hereinafter "CWS"), the police, and the Kauai Court to obtain information and clarification without success.

48)     Plaintiff is informed and believes, and thereupon alleges, that in addition to Defendants Lathrop and Leskovic explicitly being told of the 2012 Stipulation and Order giving full legal custody to Plaintiff, Defendant Kaauwai-Herrod  also was notified on December 20, 2019, by an agent of the Kauai County Police Department that Plaintiff had full legal custody of B.D.

49)     Nevertheless, after B.D. was seized on December 20, 2019, Plaintiff was not permitted to see or speak to B.D. for an extended period of time.

50)     For several days following the seizure of B.D. Plaintiff repeatedly told Defendants at CWS that the 2012 Stipulation and Order granted her full custody.

51)     B.D.'s grandmother also spoke with CWS Defendants over the phone to report the active 2012 Stipulation and Order granting full custody to Plaintiff.

52)     Plaintiff reported to the Kauai police that B.D. had been kidnapped and was in the custody of an allegedly abusive, non-custodial parent, but the police declined to accept any report and/or take any action.

53)     Plaintiff is informed and believes, and thereupon alleges, that after the December 20, 2019 seizure of B.D. Defendants Lathrop, St. Augustine, Cho, Leskovic, Kaauwai-Herrod, and Kaulukukui, among others, were communicating amongst each other and acting in concert to prevent any such police report from being filed, to prevent Plaintiff's claims from being investigated and to perpetuate what they knew to be the unlawful placement of B.D. in the custody of Defendant Keahiolalo.

54)     On December 31, 2019, Plaintiff appeared in the Family Court of the Fifth Circuit and consented to the entry of a restraining order as to contacts with Defendant Keahiolalo, his wife, and their two minor children.

55)     Through counsel, Plaintiff moved to dismiss and vacate any claims brought by Defendant Keahiolalo in behalf of B.D. because Defendant Keahiolalo has no legal rights with respect to B.D.

56)     Through counsel, Defendant Iseri and Defendant Keahiolalo

strenuously opposed the oral motion to dismiss and argued that "there is or must be a CWS order" authorizing the legal seizure of B.D. even though no order could be or ever was produced in Court.

57)   Over objection, the Kauai Family Court Judge then granted Plaintiff's motion to dismiss due to Defendant Keahiolalo's "lack of authority . . . to file on behalf of [B.D.]."

58)   The Family Court Judge declined to issue any additional orders and directed counsel, as officers of the Court, to discuss and work out the custody matters.

59)   Upon leaving Court on December 31, 2019, Defendant Iseri refused to talk to Plaintiff's counsel, refused requests by Plaintiff and B.D.'s grandmother to see or talk to B.D., and refused to produce any orders or other authority that would allow Defendant Keahiolalo to maintain physical custody of B.D. despite the 2012 Stipulation that remains in full legal effect.

60)   Immediately following the hearing on December 31, 2019, Plaintiff's counsel made repeated efforts to contact CWS representatives on Kauai and Hawaii islands to request clarification and have B.D. either returned to her mother or placed in foster custody somewhere other than with an allegedly abusive father.

61)     Initially Defendant Cho informed Plaintiff's attorney that there was no order entitling CWS to seize B.D., that there was no pending investigation, and that CWS had no further interest or involvement in the matter in an apparent attempt to deny that CWS was involved in the seizure of B.D. and make it appear as if Defendant Keahiolalo simply took custody of B.D. himself as her natural father.

62)     Approximately one hour later, a representative of the Kauai County Police Department advised Plaintiff's attorney that CWS had changed its position and would be "filing something" in the Family Court in Kona "within a few days."

63)     Accordingly, the Kauai County Police Department refused to assist Plaintiff in any manner by taking custody of B.D. and/or removing B.D. from an allegedly abusive parent whose legal rights to custody were terminated.

64)     Plaintiff is informed and believes, and thereupon alleges, that following the hearing in the Family Court on December 31, 2019, Defendants Kaauwai-Herrod, Leskovic, St. Augustine, Iseri, and Keahiolalo maliciously conspired to generate a report deeming Plaintiff and Plaintiff's home unsafe for the purpose of enabling Defendant Iseri to refile for protective custody of B.D. in Defendant Keahiolalo's behalf.

65)     Plaintiff is informed of email communications wherein Defendants Kaauwai-Herrod, Leskovic, and St. Augustine discuss generating a

report deeming Plaintiff and her home unsafe even though Defendant Leskovic had previously performed a Comprehensive Strengths and Risk Assessment Rating of Plaintiff on December 19, 2019 assessing Plaintiff a risk score of 3 on a scale of 0-51 with no risk being 0, low/moderately low risk 1-17, moderate risk 18-34, and moderately high/high risk being 35-51.

66)    Pursuant to the investigation and report later prepared by Defendants St. Augustine and Kaauwai-Herrod, the Defendants simply allowed B.D. to remain in the custody of Defendant Keahiolalo despite full knowledge of previous accusations of abuse against him, despite the February, 2012 Stipulation and Order terminating all of his parental rights, and despite the ruling of the Kauai Family Court on December 31, 2019, reaffirming that Keahiolalo had no custodial rights to B.D.

67)    Following the hearing in the Family Court on December 31, 2019, the Defendants apparently realized that they had acted impermissibly and created "a mess" – their words – and several days later B.D. was removed from the home of Defendant Keahiolalo and placed in a foster home on Kauai without any contacts or communications between Plaintiff and her daughter.

68)    On or about January 6, 2020, the Department of Human Services finally filed a petition for temporary custody of B.D. two weeks after she had been seized and taken to Kauai.

69)     Following evidentiary hearings conducted on January 8 and 10, 2020, the petition for temporary custody was denied, and B.D. was returned to her mother twenty-one days after the Defendants had abducted her.

70)     From December 2, 2019 up through December 31, 2019, Defendants had frequent and direct contacts with Defendant Keahiolalo in the form of text messages, emails, phone conversations, and in-person visits – both formal and informal – in which Defendants worked together at every step with Defendant Keahiolalo to assist with and prepare documents that deliberately misled the Family Court, to conspire to orchestrate the "grab and go" abduction of B.D., and to maintain the appearance that the actions taken were appropriate and lawful.

71)     Despite Defendants pervasive and well-documented actions assisting Defendant Keahiolalo to circumvent the legal process, Defendants assured Plaintiff's counsel as late as December 31, 2019 that Defendants had not been involved in B.D.'s seizure.

72)     In actuality, B.D. was seized by the Defendants and delivered to her natural father with whom she has no familiarity and has had no relationship since Defendant Keahiolalo was alleged to have sexually abused her as a young child and gave up all of his custodial rights in 2012.

73)     Plaintiff is informed and believes, and thereupon alleges, that but for the Defendants abuse of their respective positions with CWS and the police, the seizure of B.D. would not have been possible.

74)     B.D. was seized by the Defendants without the prior authorization of any judge or court and without a hearing of any kind.

75)     Plaintiff and B.D. were not permitted to visit with each other and were prevented from speaking or communicating by telephone, video conference, or other means for more than two weeks.

76)     As a direct and proximate result of the foregoing B.D. was kidnapped and held by the Defendants without legal cause or justification, and B.D.'s close relationship with her mother and Plaintiff's custodial and familial rights were violated and damaged in amounts to be proven at trial.

77)     As a direct and proximate result of the foregoing both Plaintiff and B.D. suffered and will continue to suffer from extreme anxiety, fear, and emotional distress in amounts to be proven at trial.

## FIRST CAUSE OF ACTION
### (Against Defendants Bhanot, Leskovic, Lathrop, Kaauwai-Herrod, Cho, St. Augustine, and Kaulukukui)

78)     Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1-77, above.

79) The State of Hawaii, Department of Human Services, Child Welfare Services Division has had and continues to have and to implement a policy and practice of seizing children from their custodial parents without sufficient cause, and without first seeking and obtaining authorization from any court, in violation of the custodial and familial and due process rights of children and their parents.

80) After seizing children, without a court order, the State of Hawaii, Department of Human Services, Child Welfare Services Division, regularly holds those children under inadequate and unsafe conditions, denies and interferes with visitation and communications between the children and their parents, provides poor supervision, and delays legal proceedings to authorize the seizures or return the children to their parents.

81) The Defendants' actions as set forth above violated rights to due process of law guaranteed to Plaintiff and B.D. by the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I of the Constitution of the State of Hawaii, and 42 U.S.C. Section 1983, inter alia.

82) The Defendants acted herein with deliberate indifference to the rights and well-being of Plaintiff and B.D.

83) As a direct and proximate result of the Defendants' aforesaid actions Plaintiff and B.D. already have suffered and will continue to suffer damages in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### (Against Defendants Leskovic, Lathrop, Kaauwai-Herrod, Cho, St. Augustine, Keahiolalo, and Iseri)

84)     Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1-77, above.

85)     Plaintiff is informed and believes, and thereupon alleges, that the Defendants in their individual capacities engaged herein in a pattern of racketeering activity that was intended and carried out to cause injuries to Plaintiff and B.D. by impermissibly seizing and kidnapping B.D., making untruthful reports or statements about Plaintiff, and refusing to allow any visitation or communication between Plaintiff and B.D. in deliberate disregard of an outstanding and valid state court order thereby violating 18 U.S.C. Section 1962(c), inter alia.

86)     Plaintiff is informed and believes that the Defendants acted herein knowingly, deliberately, intentionally, and maliciously.

## THIRD CAUSE OF ACTION
### (Against all Defendants)

87)     Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1-77, above.

88)     Plaintiff is informed and believes, and thereupon alleges, that the Defendants acted herein negligently, thereby directly and proximately causing Plaintiff and B.D. to suffer emotional distress, worry, and anxiety in amounts to be proven at trial.

WHEREFORE Plaintiff prays for relief as follows:

1)      The entry of a judgment declaring that the seizure of B.D. without any due process was unlawful and that Plaintiff is the sole person entitled to custody and possession of her daughter;

2)      The entry of a permanent injunction restraining the Defendants, their agents, employees, and successors in interest from continuing to seize and restrain children without first obtaining a court order;

3)      General and special damages in amounts to be proven at trial;

4)      Punitive and/or exemplary damages from the individually named Defendants;

5)      Reimbursement of Plaintiff's costs and expenses herein, including reasonable provision for her attorneys' fees; and

6)      For such further and additional relief as the Court deems appropriate and just.

DATED:  Honolulu, Hawaii, September 22, 2020.

/s/ Eric A. Seitz
ERIC A. SEITZ
GINA SZETO-WONG
JONATHAN M.F. LOO
KEVIN A. YOLKEN

Attorneys for Plaintiff
HANNAH DAVID

21