IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HANNAH DAVID, Individually and on behalf of her minor daughter B.D., <br><br> Plaintiffs, <br><br> vs. <br><br> CATHY BETTS, DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAII; ET AL., <br><br> Defendants. <br> ——————————————— <br><br> AND RELATED CROSSCLAIMS AND COUNTERCLAIM. | Civ. No. 20-00002 JMS-WRP <br><br> ORDER (1) DENYING DEFENDANT KAULUKUKUI'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, ECF NO. 134; (2) GRANTING IN PART KAULUKUKUI'S MOTION TO DISMISS KEAHIOLALO'S AMENDED CROSSCLAIM, ECF NO. 136; AND (3) GRANTING IN PART KEAHIOLALO'S SUBSTANTIVE JOINDER, ECF NO. 160 |

**ORDER (1) DENYING DEFENDANT KAULUKUKUI'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, ECF NO. 134; (2) GRANTING IN PART KAULUKUKUI'S MOTION TO DISMISS KEAHIOLALO'S AMENDED CROSSCLAIM, ECF NO. 136; AND (3) GRANTING IN PART KEAHIOLALO'S SUBSTANTIVE JOINDER, ECF NO. 160**

## I. INTRODUCTION

Co-Defendant/Cross-Defendant Gina Kaulukukui ("Kaulukukui")—a Kauai County police officer—has filed three motions in this procedurally-complex action brought by Plaintiffs Hannah David ("David"), individually and on behalf of

David's minor child B.D. ("B.D.") (collectively, "Plaintiffs") against Kaulukukui and several other Co-Defendants.  ECF Nos. 134, 136, and 158.

First, Kaulukukui moves to dismiss claims against her in Plaintiffs' First Amended Complaint ("FAC"), which asserts two counts against Kaulukukui and others:  Count One is a civil rights claim under 42 U.S.C. § 1983, and Count Three is a claim under state law for negligence or negligent infliction of emotional distress ("NIED").  *See* ECF No. 119.[1]

Second, Kaulukukui moves to dismiss claims against her in an Amended Crossclaim brought against her and others by Co-Defendant/Cross-Claimant William Keahiolalo ("Keahiolalo").  ECF No. 136.  Keahiolalo's Amended Crossclaim alleges three counts:  Count I is a civil rights claim under § 1983 for violation of Keahiolalo's rights, Count II is state law claim for negligence, and Count III is a claim for contribution and/or indemnity.  *See* ECF No. 129-1.

---

[1] The Court construes the FAC as naming two Plaintiffs, David *and* B.D.  Although much of the FAC alleges actions by "Plaintiff," it is brought by "Plaintiff HANNAH DAVID, Individually and on behalf of her minor daughter, B.D.," ECF No. 119 at PageID # 928, and apparently seeks relief on behalf of both.  *See, e.g.*, *id.* at PageID # 945 ("As a direct and proximate result of the Defendants' aforesaid actions[,] Plaintiff and B.D. already have suffered and will continue to suffer damages in amounts to be proven at trial.").

In Count Two, the FAC also asserts a claim under 18 U.S.C. § 1962(c) for violations of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO").  *Id.* at PageID # 946.  Kaulukukui, however, is not named as a Defendant in this RICO count, and the court does not otherwise address it in this Order.

Third, also only as to claims against her, Kaulukukui filed a Motion to Dismiss a Crossclaim for contribution and/or indemnity brought against her and others (including Keahiolalo) by Co-Defendant Shawn Lathrop ("Lathrop").  ECF No. 158.  In turn, Keahiolalo filed a Substantive Joinder in that Motion, seeking to dismiss Lathrop's Crossclaim against him.  ECF No. 160.

Based on the following, the Court (1) DENIES Kaulukukui's Motion to Dismiss the FAC, ECF No. 134; (2) GRANTS in PART Kaulukukui's Motion to Dismiss Keahiolalo's Amended Crossclaim against Kaulukukui, ECF No. 136; (3) TERMINATES as MOOT Kaulukukui's Motion to Dismiss Lathrop's Crossclaim against Kaulukukui, ECF No. 158; and (4) GRANTS in PART Keahiolalo's Substantive Joinder, ECF No. 160.[2]

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

This action arises out of a December 20, 2019 incident in which State Child Welfare Services ("CWS") employees, with the aid of police, took custody of then-eleven year old B.D. at her school and removed her from David's (B.D.'s mother) custody, placing her (at least temporarily) with Keahiolalo (B.D.'s natural

---

[2] The court decides the Motions without oral argument under Local Rule 7.1(c).

father).  *See* FAC ¶ 1, ECF No. 119 at PageID # 928.[3]  The CWS employees

removed B.D. from David apparently based upon a December 4, 2019 Hawaii

Family Court restraining and/or protective order issued on behalf of Keahiolalo

and B.D. that restrained David from having contact with B.D. as well as with

Keahiolalo and his other family members.  *Id.* at PageID # 935; ECF No. 3-2.

According to the FAC, the petition for the December 4, 2019 Hawaii Family Court

order was drafted by Kauai County police officer Kaulukukui, who prepared the

petition for filing after Keahiolalo met with her on December 2, 2019.  ECF No.

119 at PageID # 934.  Allegedly, that December 4, 2019 Family Court order "did

not, directly or indirectly, authorize Keahiolalo to obtain or receive custody of

B.D."  *Id.* at PageID # 935.

---

[3] Although the FAC was filed on September 22, 2020, ECF No. 119 at PageID # 927, the case is not new to the court.  When the action was originally filed in January 2020, Plaintiffs also filed a Motion for Temporary Restraining Order ("TRO") that sought the return of B.D. to David's custody.  ECF No. 3.  In conjunction with that Motion for TRO, some of the parties submitted evidence and made arguments.  *See, e.g.*, ECF Nos. 3-2 to 3-4; 12-1 to 12-3.  The Motion for TRO was subsequently withdrawn after further developments in a Hawaii Family Court proceeding.  *See* ECF No. 19.  The present Motions to Dismiss, however, are directed only to the allegations of the FAC and a corresponding Amended Crossclaim.  Accordingly, this factual background is necessarily limited only to those allegations, and certain documents of which the court can take judicial notice (even if the court is aware of other information or details that are not pled).  "At the motion-to-dismiss stage, [courts] take all well-pleaded factual allegations in the complaint as true, construing them 'in the light most favorable to the nonmoving party,' and then determine[s] 'whether they plausibly give rise to an entitlement to relief.'"  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (quoting *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

There is much more to this case, which involves allegations by Plaintiffs against numerous Defendants, including several CWS workers and the Director of the State of Hawaii Department of Human Services, Keahiolalo, a lawyer for Keahiolalo, as well as Kaulukukui.  But because the present Motions are brought only by Kaulukukui (with a substantive joinder on a small aspect by Keahiolalo), the background here is limited to the relevant allegations against Kaulukukui, with many of the salient details of those allegations set forth in the appropriate discussion sections that follow.  The parties know the allegations (and the disputes about them)—this section only sets forth the basic context necessary to understand the court's rulings on the Motions to Dismiss.

The December 4, 2019 Hawaii Family Court Order was apparently triggered by David's arrest a few days earlier, on November 29, 2019.  According to the FAC, David became upset with Keahiolalo after an incident between David, Keahiolalo and B.D. on November 28, 2019 at a shopping center on Kauai.  ECF No. 119 at PageID ## 933-34.  "On the following day, [David] took B.D. to Defendant Keahiolalo's workplace and demanded that he apologize to B.D., which he refused to do."  *Id.* at PageID # 934.  "In her state of extreme anger, [David] then proceeded to yell and swear at Defendant Keahiolalo, taunt and push him—all

on videotape—until the police arrived and arrested [David] on misdemeanor

charges of harassment and third[-]degree assault."  *Id.*

Much of the case centers on the meaning and effect of a nearly eight-

year old February 14, 2012 Stipulation and Order of the Hawaii Family Court (the

"February 14, 2012 Stipulation and Order") between David and Keahiolalo

regarding custody of B.D., among other matters.  According to the FAC,

> [David] and Defendant Keahiolalo agreed and the
> [Family] Court ordered that [David] have full legal and
> physical custody of B.D., that Keahiolalo have no rights
> to visitation with B.D., that Keahiolalo stay away from
> and have no contacts whatsoever with [David] and
> B.D.,[4] that Keahiolalo provide child support and health
> insurance for B.D., and allowed [David] to remove B.D.
> from the jurisdiction at [David's] sole discretion.

*Id.* at PageID ## 932-33.[5]  And, as discussed to follow, although not alleged in the

FAC, the February 14, 2012 Stipulation and Order includes a provision reading

"[i]n the absence of a compelling emergency that affects [B.D.'s] health or safety,

---

[4] The February 14, 2012 Stipulation and Order does not appear to actually prohibit contact between Keahiolalo and B.D, although it does prohibit contact between Keahiolalo and *David*.  A redacted version of that Stipulation and Order submitted to the court reads: "The [Family] Court orders the entry of a no-contact physical restraining order which prohibits Mr. Keahiolalo from having any contact with Hannah David."  ECF No. 134-3 at PageID # 1023; ECF No. 3-3 at PageID # 34.

[5] Although it is old, the February 14, 2012 Stipulation and Order has not been amended, and remains in full force and effect.  ECF No. 119 at PageID # 933.  Further, according to the FAC, "[f]rom February, 2012, up to and until late November, 2019, B.D. had virtually no contacts with Defendant Keahiolalo."  *Id.*

Mr. Keahiolalo stipulates and agrees not to file any motions in the Family Court of the State of Hawaii or another  jurisdiction."  ECF No. 134-3 at PageID # 1023; ECF No. 3-3 at PageID # 35.

The FAC alleges that "Keahiolalo knowingly and intentionally omitted mention or reference to and failed to advise the [Family] Court of the Stipulation and Order dated February 14, 2012, that deprived him of all legal and custodial rights to B.D."  ECF No. 119 at PageID # 935.  "[David] is informed and believes that had the presiding judge in the Family Court been informed of the [February 14, 2012 Stipulation and Order], Defendant Keahiolalo's application for a temporary restraining order would not have been granted as to B.D."  *Id.*  Indeed, the FAC further alleges that, on December 31, 2019, a Family Court judge (apparently after being told of the February 14, 2012 Stipulation and Order) dismissed the portion of the petition pertaining to B.D. "due to Defendant Keahiolalo's 'lack of authority. . . to file on behalf of [B.D.,]'" *id.* at PageID # 940, leaving it intact as to protection for Keahiolalo and his family members. "[S]everal days" after that December 31, 2019 Family Court dismissal "B.D. was removed from the home of Defendant Keahiolalo and placed in a foster home on Kauai without any contacts or communications between [David] and her daughter." *Id.* at PageID # 942.

As discussed later, it is unclear whether Kaulukukui knew about the February 14, 2012 Stipulation and Order when she prepared and assisted Keahiolalo with the Family Court petition.  But the FAC makes several allegations against various State of Hawaii CWS employees, indicating that at least *those* officials became aware of the Stipulation and Order *before* B.D. was removed from David's custody on December 20, 2019, or knew soon thereafter.  *See id.* at PageID ## 936-40.  And the FAC alleges that Kaulukukui "acted in concert with [CWS employees], among others, to file and serve the petition in the family court, to provide Defendant Keahiolalo with advice enabling him to . . . circumvent the existing [February 14, 2012] Stipulation and Order . . . and to orchestrate and carry out the seizure of B.D. and placement with Defendant Keahiolalo without any authority to do so."  *Id.* at PageID ## 935-36.

It further alleges that David sought to report to Kauai police that Keahiolalo was "an allegedly abusive, non-custodial parent," *id.* at PageID # 939, but several CWS employees, along with Kaulukukui, coordinated efforts to prevent David's complaints from being investigated "to perpetuate what they knew to be the unlawful placement of B.D. in the custody of Defendant Keahiolalo."  *Id.* According to the FAC, "[f]rom December 2, 2019 up through December 31, 2019, . . . Defendants worked together at every step with Defendant Keahiolalo to assist

8

with and prepare documents that deliberately misled the Family Court, to conspire to orchestrate the 'grab and go' abduction of B.D., and to maintain the appearance that the actions taken were appropriate and lawful." *Id.* at PageID # 943.

On or about January 6, 2020, the Hawaii Department of Human Services filed a petition for temporary custody of B.D. *Id.* at PageID # 942. B.D. was returned to David's custody following evidentiary hearings on that petition conducted in the Hawaii Family Court on January 8 and 10, 2020. *Id.* at PageID # 943.

## B.    Procedural History

Plaintiffs initiated this action on January 2, 2020 by filing a Complaint and Motion for TRO, seeking return of B.D. to David's custody. ECF Nos. 1, 3. After that Motion for TRO was withdrawn, ECF No. 19, and after unrelated litigation regarding the initial Complaint, Plaintiffs eventually filed the FAC on September 22, 2020. ECF No. 119. The FAC names as Defendants: (1) Pankaj Bhanot (the then-State Director of the Department of Human Services, in his official capacity);[6] (2) Aimee Leskovic, Penny Cho, Shawn Lathrop, Iwalani Kaauwai-Herrod, and Dino St. Augustine, who are all CWS workers on Kauai or in Kailua-Kona on Hawaii Island (collectively "CWS Defendants" or "State

---

[6] Bhanot has been succeeded by Cathy Betts. Betts has replaced Bhanot as a Defendant under Federal Rule of Civil Procedure 17(d).

Defendants"), in their official and/or individual capacities; (3) Keahiolalo;

(4) Shaylene Iseri, who is a lawyer who apparently was representing Keahiolalo at

relevant times; and (5) Kaulukukui. *See* ECF No. 119 at PageID ## 929-31.

      The FAC has three Counts. Count One claims a violation of

Plaintiffs' civil rights under 42 U.S.C. § 1983 against Defendants Betts, Leskovic,

Cho, Lathrop, Kaauwai-Herrod, St. Augustine, and Kaulukukui. *Id.* at PageID

## 944-45. As noted earlier, Count Two asserts a civil RICO claim against

Leskovic, Lathrop, Kaauwai-Herrod, Cho, St. Augustine, Keahiolalo, and Iseri. *Id.*

at PageID # 946. And Count Three asserts a negligence claim against all

Defendants. *Id.*

      On October 13, 2020, Keahiolalo filed an Amended Crossclaim

asserting counts for a civil rights violation under § 1983, negligence, and

contribution/indemnity against Lathrop, Leskovic, Betts, St. Augustine, Kaauwai-

Herrod, Cho, and Kaulukukui. ECF. No. 129-1.[7] He also filed an Amended

Counterclaim against David. ECF No. 129-2.

      On October 28, 2020, Betts and Leskovic filed an Amended

Crossclaim for contribution/indemnity against Keahiolalo. ECF No. 138-1. On

December 22, 2020, Lathrop filed a Crossclaim for contribution/indemnity against

---

[7] The allegations of this Amended Crossclaim are detailed later in this Order, when determining whether it states valid claims against Kaulukukui.

Keahiolalo, Kaulukukui, and Iseri.  ECF No. 147-1.  And on December 24, 2020, Lathrop, Kaauwai-Herrod, Cho, and St. Augustine filed a Crossclaim for contribution/indemnity against Keahiolalo.  ECF No. 150-1.

Kaulukukui filed her Motion to Dismiss the FAC on October 26, 2020.  ECF No. 134.  Plaintiffs filed an Opposition on January 4, 2021, ECF No. 152, and Kaulukukui filed a Reply on January 11, 2021, ECF No. 154.

Kaulukukui filed her Motion to Dismiss Keahiolalo's Amended Crossclaim on October 27, 2020.  ECF No. 136.  Keahiolalo filed his Opposition on December 23, 2020, ECF No. 148, and Kaulukukui filed her Reply on January 8, 2021, ECF No. 153.

Kaulukukui filed her Motion to Dismiss Lathrop's Crossclaim on January 12, 2021.  ECF No. 158.  No Opposition by Lathrop was filed, and Lathrop later stipulated to dismiss the Crossclaim against Kaulukukui on February 17, 2021.  ECF No. 174.  Meanwhile, Keahiolalo had filed a substantive joinder in Kaulukukui's Motion to Dismiss Lathrop's Crossclaim on January 14, 2021.  ECF No. 160.  Lathop filed an Opposition to the Substantive Joinder on January 26, 2021, ECF No. 164, and Keahiolalo filed a Reply on February 2, 2021, ECF No. 167.

# III. **DISCUSSION**

## A.    **Kaulukukui's Claim of Qualified Immunity as to Count One of the FAC**

Kaulukukui argues that she is entitled to qualified immunity as to Plaintiffs' § 1983 claim because, under the FAC's allegations, she did not violate a clearly established constitutional right—when all she did was draft a petition for protective order on behalf of Keahiolalo for filing with the Hawaii Family Court. The court disagrees.

### *1.    Standards*

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has emphasized that this is a low bar, explaining that 'qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (brackets omitted)). "Indeed, 'when properly applied,' qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Al-Kidd*, 563 U.S. at 743) (brackets omitted).

12

Courts apply a two-step analysis to determine whether a government official is entitled to qualified immunity:  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on separate grounds by Pearson v. Callahan*, 555 U.S. 223, 235-236 (2009).  Second, a court analyzes whether the right was "clearly established," assessed "in light of the specific context of the case, not as a broad general proposition."  *Id.*  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Al-Kidd*, 563 U.S. at 741.  If there was no violation of constitutional law, or if the law was not clearly established, then an official has qualified immunity.  And courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

"Qualified immunity is an immunity from suit rather than a mere defense to liability," *id.* at 237, and thus should be resolved "at the earliest possible stage in litigation," *id.* at 232.  Nevertheless, "[d]etermining claims of qualified

immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates*, 883 F.3d at 1234 (citation omitted). At this stage, courts may not dismiss a complaint making "'a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, courts "consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware, 'in light of the specific context of the case.'" *Id.* at 1235 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). And "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992)).

## 2. *Application*

Applying those standards, Kaulukukui is not entitled to qualified immunity at this motion-to-dismiss stage. Taken as true, the FAC plausibly alleges that Kaulukukui was responsible, at least in part, for a violation of Plaintiffs' constitutional right of familial association that was clearly established long before 2019.

a.     *Clearly established constitutional right*

Ninth Circuit law "clearly establishe[d] [before 2019] that the rights of parents and children to familial association under the Fourteenth, First, and Fourth Amendments are violated if a [government] official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue." *Keates*, 883 F.3d at 1237-38.  More succinctly, "[o]fficials may not remove children from their parents without a court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury.'" *Id.* at 1236 (quoting *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007)).  "That the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 920-21 (5th Cir. 2000) (footnote with citations omitted).[8]

---

[8] The FAC specifically alleges that Plaintiffs' constitutional rights to due process were violated, but it also broadly alleges that the State regularly seizes children without a court order and violates "custodial and familial and due process rights of children and their parents."  ECF

(continued . . .)

b.    *Violation of the constitutional right*

Next, accepting its well-pleaded allegations as true, the FAC alleges a plausible theory that Kaulukukui could be liable for violating Plaintiffs' right of familial association.  True, there was a Hawaii Family Court order granting a TRO that enjoined David from contact with B.D., thus authorizing government officials to remove B.D. from David's custody, at least temporarily.[9]  It is also generally true, as Kaulukukui argues, that where there is reasonable cause to believe that a child is subject to domestic abuse, there is nothing wrong with a police officer drafting a Hawaii Family Court petition for protective order, on behalf of a parent and the child, to restrain another parent from having contact with that child.

But the FAC alleges more—it alleges that Kaulukukui "acted in concert with [other Defendants] to file and serve the petition in the family court, to

_____

(. . . continued)

No. 119 at PageID # 945.  There may or may not be a difference between, on the one hand, a parents' right not to have a child removed from their custody without due process, and on the other hand, a right not to have that child then placed with a different parent.  The parties have not addressed, and the court has not determined, whether the scope of a constitutional right of familial association encompasses a specific right to a particular placement (even assuming it were in violation of a custody or court order, e.g., B.D.'s subsequent placement with Keahiolalo), or whether that would make a difference here.  It is enough for present purposes at this motion-to-dismiss stage that the FAC alleges a plausible violation of familial association by wrongfully removing B.D. from David.

[9] *See also* Hawaii Revised Statutes ("HRS") § 587A-8 (setting forth circumstances whereby a police officer may assume protective custody of a child without a court order); HRS § 587A-9 (setting forth provisions for the State to assume temporary foster custody without a court order).

provide Defendant Keahiolalo with advice enabling him to obtain the protective

order and thus circumvent the existing Stipulation and Order regarding custody of

B.D., and to orchestrate and carry out the seizure of B.D. and placement with

Defendant Keahiolalo without any authority to do so." ECF No. 119 at PageID

## 935-36. It is a plausible reading of this allegation to infer that Kaulukukui

knew about the February 14, 2012 Stipulation and Order—and thus knew that

Keahiolalo "shall have no visitation, supervised or otherwise, with [B.D]," ECF

No. 134-3 at PageID # 1022—when she prepared the Family Court petition on

December 2, 2019. And she could have known that Keahiolalo had no authority to

file a TRO on behalf of B.D., as a Hawaii Family Court judge later determined (as

also alleged in the FAC). ECF No. 119 at PageID # 940.

       The FAC further alleges that, after B.D. was placed with Keahiolalo

on December 20, 2019, David "reported to the Kauai police that B.D. had been

kidnapped and was in the custody of an allegedly abusive, non-custodial parent

[i.e., Keahiolalo], but the police declined to accept any report and/or take any

action." ECF No. 119 at PageID # 939. The FAC then alleges that:

> [A]fter the December 20, 2019 seizure of B.D.[,]
> Defendant[] . . . Kaulukukui, among others, were
> communicating amongst each other and acting in concert
> to prevent any such police report from being filed, to
> prevent Plaintiff's claims from being investigated and to

> perpetuate what they knew to be the unlawful placement
> of B.D. in the custody of Defendant Keahiolalo.

*Id.* That is, the FAC plausibly alleges that, even if Kaulukukui did not know about the February 14, 2012 Stipulation and Order when she prepared the Family Court petition, she knew about it soon thereafter. And it likewise further alleges:

> From December 2, 2019 up through December 31, 2019,
> Defendants [presumably including Kaulukukui] had
> frequent and direct contacts with Defendant Keahiolalo
> in the form of text messages, emails, phone
> conversations, and in-person visits—both formal and
> informal—in which Defendants worked together at every
> step with Defendant Keahiolalo to assist with and prepare
> documents that deliberately misled the Family Court, to
> conspire to orchestrate the 'grab and go' abduction of
> B.D., and to maintain the appearance that the actions
> taken were appropriate and lawful.

*Id.* at PageID # 943. Given those allegations, the FAC plausibly alleges that Kaulukukui knowingly assisted in the wrongful removal of B.D. from David's custody in violation of Plaintiffs' rights to familial association.

It might be that the November 29, 2019 incident at Keahiolalo's workplace (where "[i]n her state of extreme anger, Plaintiff . . . proceeded to yell and swear and Defendant Keahiolalo, taunt and push him—all on videotape—until the police arrived and arrested Plaintiff on misdemeanor charges of harassment and third[-]degree assault," ECF No. 119 at PageID # 934) was sufficiently egregious to justify at least a temporary removal of B.D. from David. It might be that

Kaulukukui did *not* know on December 2, 2019 when she prepared the Family Court petition for protective order that Keahiolalo had no legal authority to file on B.D.'s behalf.  It might be that Kaulukukui did not participate in a wrongful "conspiracy" to "perpetuate what they knew to be the unlawful placement of B.D. in the custody of Defendant Keahiolalo."  ECF No. 119 at PageID # 939.  It might also be true that Keahiolalo, despite having no custody, was within his rights to file a motion with the Family Court in December 2019, given what he thought was a "compelling emergency that affects [B.D.'s] health or safety."  ECF No. 134-3 at PageID # 1023.[10]  And, ultimately, it might even be true that B.D.'s removal and subsequent placement was not wrongful at all.

---

[10] Kaulukukui makes much of the actual wording of the February 14, 2012 Stipulation and Order, of which the court can consider under an "incorporation-by-reference" doctrine.  *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (reiterating that "a defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'") (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  Kaulukukui emphasizes that the February 14, 2012 Stipulation and Order provides that "*[i]n the absence of a compelling emergency that affects [B.D.'s] health or safety*, Mr. Keahiolalo stipulates and agrees not to file any motions in the Family Court of the State of Hawaii or another jurisdiction."  ECF No. 134-3 at PageID # 1023 (emphasis added).  She appears to argue that she was therefore authorized to prepare a petition on Keahiolalo's and B.D.'s behalf.  But this argument is double-edged.  Reliance on that "compelling emergency" clause of the Stipulation also implies or admits that Kaulukukui knew at that time that David "shall continue to have sole legal and physical custody of [B.D.] [and Keahiolalo] shall have no visitation, supervised or otherwise[.]"  *Id.* at PageID # 1022.

Moreover, *Khoja* cautioned courts about drawing inferences (in favor of a defendant) from incorporated documents, "consistent with the prohibition against resolving factual disputes at the pleading stage."  899 F.3d at 1003 (citations omitted).  The incorporation-by-reference doctrine does not allow a court to consider a defense at the pleading stage that is inconsistent

(continued . . .)

But those questions cannot be definitively answered at this motion-to-dismiss stage.  It bears repeating that "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims."  *Keates*, 883 F.3d at 1235 (quoting *Pelletier*, 968 F.2d at 872).  And it also bears emphasizing that "a decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions."  *Id.* (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)).

---

(. . . continued)

with a well-pled complaint.  *See id.* at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint.  Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").  *Khoja* explained:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint . . . .  Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Id.* at 1003.  In short, the precise meaning and application of the February 14, 2012 Stipulation and Order is not suited for resolution at this motion to dismiss stage; it might, however, be more appropriate for resolution at summary judgment, where other evidence can be considered in context.

**B.      Count Three's Negligence/NIED Allegations Against Kaulukukui**

        Kaulukukui also seeks to dismiss Count Three (alleging negligence, or NIED), arguing that she has a qualified privilege and that the FAC does not clearly set forth the elements of a negligence-based claim against her.  Although Count Three was carelessly drafted (simply alleging that "Defendants acted herein negligently," ECF No. 119 at PageID # 946), the court will allow the claim to stand against Kaulukukui.  The FAC alleges facts supporting a negligence-based (or gross negligence) claim, and a duty owed by Kaulukukui to Plaintiffs is apparent as a matter of law.

### 1.      *Qualified Privilege*

        Initially, Kaulukukui argues that the negligence claim fails because she has a qualified privilege under state law and the FAC does not allege that she acted with malice.  The court disagrees.

        "Under Hawaii law, it is well established that a nonjudicial government official performing a public duty enjoys the protection of a qualified privilege [against certain state torts]."  *Kealoha v. Hawaii*, 2006 WL 2052331, at *5 (D. Haw. July 20, 2006) (citing *Towse v. Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982), and *Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974)).  But the official loses the qualified privilege if "in exercising his authority

[he] is motivated by malice, and not by an otherwise proper purpose." *Medeiros*, 55 Haw. at 503, 522 P.2d at 1271.  And so, "[f]or a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose." *Edenfield v. Est. of Willets*, 2006 WL 1041724, at *12 (D. Haw. Apr. 14, 2006) (citations omitted).  "[T]he phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense." *Awakuni v. Awana*, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007).  In this context, malice is defined as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." *Id.* (quoting Black's Law Dictionary 976 (8th ed. 2004)) (brackets and internal quotation marks omitted).  Kaulukukui argues that a negligence claim fails because she was not "motivated by malice" or an otherwise improper purpose.

But, as analyzed above in denying qualified immunity for constitutional claims, the FAC adequately alleges that Kaulukukui assisted in wrongfully removing B.D. from David's custody and placing B.D. with Keahiolalo, in knowing violation of the February 14, 2012 Stipulation and Order. These allegations are sufficient to preclude a state-law qualified privilege defense, at least at this motion-to-dismiss stage. *See, e.g.*, *Ikeda v. City & Cnty. of*

*Honolulu*, 2019 WL 4684455, at *8 (D. Haw. Sept. 25, 2019) ("[H]aving

concluded that [the officer defendant] is not entitled to qualified immunity . . . it

follows that the facts alleged are sufficient to support a finding of 'malice' [under

state law] in that a jury could conclude that [the officer] acted with 'reckless

disregard of the law or of a person's legal rights.'") (quoting *Awakuni*, 115 Haw. at

141, 165 P.3d at 1042).[11]  That is, the FAC alleges at least some of Kaulukukui's

actions were "malicious" for these purposes.

### 2.    *Elements of Negligence*

Kaulukukui also argues that the FAC otherwise inadequately pleads a

claim for negligence.  *See, e.g.*, ECF No. 154 at PageID ## 1302-03 (arguing that

"the complaint fails to allege that Ms. Kaulukukui owed Plaintiff[s] a duty, that

Ms. Kaulukukui breached a duty, or that any breach caused any injuries.").[12]

---

[11] This court has adopted the view that "the requirement that plaintiffs show actual malice to overcome the 'qualified or conditional privilege'. . . does not preclude negligence liability in all cases." *Krizek v. Queens Med. Ctr.*, 2019 WL 3646567, at *7 (D. Haw. Aug. 6, 2019) (quoting *Long v. Yomes*, 2011 WL 4412847, at *7 (D. Haw. Sept. 20, 2011)).  "In particular, conduct performed with 'reckless disregard of the law or of a person's legal rights' may be negligent, even though negligent conduct often does not involve malice."  *Id.* (quoting *Long*, 2011 WL 4412847, at *7).

[12] Hawaii follows the traditional definition of negligence, with the following four elements: "(1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) A failure on the defendant's part to conform to the standard required: a breach of the duty; (3) A reasonably close causal connection between the conduct and the resulting injury; and (4) Actual loss or damage resulting to the interests of another."  *Molfino v. Yuen*, 134 Haw. 181, 184, 339 P.3d 679, 683 (2014) (citation omitted).

Although the FAC does indeed fail to specifically allege each of the elements of negligence (and Plaintiffs' Opposition likewise failed to analyze a police officer's duties to members of the public), the FAC nevertheless alleges enough to state a plausible negligence-based claim on its face.

Hawaii law is well settled that "'[t]he failure of the police to provide protection against harm from third parties is ordinarily not actionable,' unless there is some 'special relationship' between the police officers (or the municipality) and the member of the public that was harmed." *Ikeda*, 2019 WL 4684455, at *8 (quoting *Ruf v. Honolulu Police Dep't*, 89 Haw. 315, 322-23, 972 P.2d 1081, 1088-89 (1999)) (some brackets omitted). "But an exception to this rule exists '*where police action has increased the risk of harm* and there is negligence in providing protection against the enhanced danger.'" *Id.* (quoting *Freitas v. City & Cnty. of Honolulu*, 58 Haw. 587, 590, 574 P.2d 529, 532 (1978)); *see also Ruf*, 89 Haw. at 322, 972 P.2d at 1088 (reiterating the exception where police increase a risk of harm and negligently provide protection against the enhanced danger). "Put simply, police officers are under a 'duty to avoid any affirmative acts which worsen the situation of the plaintiff.'" *Id.* (quoting *Fochtman v. Honolulu Police & Fire Dep't*, 65 Haw. 180, 183, 649 P.2d 1114, 1116 (1982)).

Applied here, at minimum, the FAC alleges some actions of Kaulukukui that "increased the risk of harm" to B.D. and that indicate there was "negligence in providing protection against the enhanced danger." *Freitas*, 58 Haw. at 590, 574 P.2d at 532.  It also alleges facts supporting a theory that Kaulukukui breached a "duty to avoid any affirmative acts which worsen the situation of [both B.D. and David]." *Ikeda*, 2019 WL 4684455, at *8 (quoting *Fochtman*, 65 Haw. at 183, 649 P.2d at 1116); *see also Vargas v. City & Cnty. of Honolulu*, 2020 WL 3547941, at *7 (D. Haw. June 30, 2020) (concluding that "[the police officer] owed Plaintiff a duty not to engage in any affirmative acts that would worsen her situation") (citations omitted).  The FAC also alleges facts supporting a theory that a breach of duty caused Plaintiffs' damages.  In short, the FAC alleges enough against Kaulukukui to survive this Motion to Dismiss.[13]

///

///

---

[13] It is unclear whether Count Three is making a claim for negligence or, more narrowly, only a claim for NIED.  "[A]n NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles." *Doe Parents No. 1 v. State of Haw., Dept. of Educ.*, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002) (quotation marks and citations omitted).  And generally "an NIED claimant must establish, incident to his or her burden of proving actual injury (i.e., the fourth element of a generic negligence claim), that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else."  *Id.* at 69-70, 58 P.3d at 580-81 (emphasis and internal citation omitted).  The parties have not addressed the "physical injury" element of an NIED claim, although it might be an issue that can be raised at summary judgment.

**C.     Keahiolalo's Amended Crossclaim Against Kaulukukui**

In a separate motion, Kaulukukui moves to dismiss Keahiolalo's

Amended Crossclaim asserting counts against Kaulukukui and the State

Defendants for (1) violations of Keahiolalo's civil rights under 42 U.S.C. § 1983;

(2) negligence; and (3) contribution and indemnification.  *See* ECF No. 129-1 at

PageID ## 1045-47.[14]  Again, the court focuses here on the allegations against

Kaulukukui, and not the other Crossclaim Defendants.

**1.     *The § 1983 Crossclaim***

Kaulukukui argues that she has qualified immunity for civil rights

violations (of Keahiolalo's rights) based on the limited allegations against her in

the Amended Crossclaim.  This question is distinct from alleged violations of

David's or B.D.'s civil rights, and the court concludes that—regardless of its denial

of qualified immunity at this stage as to the *FAC*—Kaulukukui is entitled to

qualified immunity as to the Amended Crossclaim.  Moreover, as currently pled,

---

[14] The motion states that, after consultation under Local Rule 7.8, Keahiolalo "has agreed to dismiss the negligence count," and the motion thus only requests that "all remaining cross-claims against [Kaulukukui] be dismissed."  ECF No. 136-1 at PageID # 1130.  Keahiolalo's Opposition does not mention negligence one way or the other, much less argue that his negligence claim against Kaulukukui has merit.  The negligence claim nevertheless remains pending even if the two parties apparently have resolved that aspect of this Amended Crossclaim.  If so, the parties should proceed to stipulate to dismiss Keahiolalo's negligence count against Kaulukukui.

the Amended Crossclaim fails to state a plausible cause of action at all against

Kaulukukui for a violation of Keahiolalo's constitutional rights.

   The Amended Crossclaim specifically mentions Kaulukukui only in

one sentence.  After alleging that David assaulted Keahiolalo on two occasions, it

alleges (consistent with the FAC) that "Kaulukukui prepared a petition for a TRO

on behalf of Keahiolalo, his wife and two daughters, as well as B.D."  ECF No.

129-1 at PageID # 1042.  It also alleges that at relevant times, "Keahiolalo was

acting at the direction and behest of [all] Crossclaim Defendants named herein."

*Id.* at PageID # 1040.  And it alleges that:

> After David's arrest, on December 17, 2019, Child
> Welfare Services contacted Keahiolalo and asked if he
> could come to Kona to pick up B.D. as if he could not,
> she would have to go into a shelter.  Keahiolalo agreed
> and on December 20, 2019, *following Crossclaim
> Defendants' instruction, direction and under their
> supervision*, Keahiolalo picked up B.D. from Waikoloa
> Elementary and Middle School.  Thereafter, they
> returned to the Kona airport to fly home to Kauai.

*Id.* at PageID # 1042 (emphasis added).

   These allegations are insufficient to state a plausible claim that

Kaulukukui could be liable for violating Keahiolalo's constitutional rights,

especially when also considering the allegations of the FAC.  *See, e.g.*, *Mathis v.*

*United Homes, LLC,* 607 F. Supp. 2d 411, 419 (E.D.N.Y. 2009) ("[I]n determining

the adequacy of the . . . cross-claims, the court shall consider the allegations set forth in the cross-claims and the plaintiffs' complaints, which are integral to the cross-claims, as well as the documents on which the cross-claims rely."); *Core Const. & Remediation, Inc. v. Vill. of Spring Valley, NY*, 2007 WL 2844870, at *11 (E.D. Pa. Sept. 27, 2007) (considering allegations of both the complaint and crossclaim in assessing a motion to dismiss a crossclaim, where the crossclaim incorporated the complaint by reference).  At minimum, then, Kaulukukui is entitled to qualified immunity on the Amended Crossclaim even assuming that Keahiolalo has his own clearly-established constitutional right.  *See Saucier*, 533 U.S. at 201 (setting forth one prong of the test as "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").[15]

---

[15] The Amended Crossclaim appears to raise a deprivation of two constitutional rights: due process and familial association.  It alleges that after B.D. had been placed in Keahiolalo's home on December 20, 2019, B.D. was then taken from his home and placed in foster care:

> 21.  On January 3, 2020, David filed the underlying civil lawsuit herein. Thereafter, CWS Worker Brandi contacted Crossclaim Plaintiff at 1422 hours and advised him that due to this lawsuit, that CWS Worker Brandi would be picking up B.D. between 2:40 and 2:45 pm and placing her in a foster home on Kauai. Keahiolalo was devastated as based on the representations he was given by the Crossclaim Defendants, he had made assurances to B.D. regarding the stability of her future within his Ohana . . . .

ECF No. 129-1 at PageID # 1043.  It continues:

(continued . . .)

If the Amended Crossclaim's § 1983 theory is based on the January 3, 2020 removal of B.D. from *Keahiolalo's* home (after B.D. was placed there on December 20, 2019, allegedly wrongfully according to the FAC) and the harm that such removal allegedly caused to *Keahiolalo's* right of familial association, then

---

(. . . continued)

22.  Having no choice other than to comply with CWS's directives, Keahiolalo had to tell his daughter B.D. she was going to be removed from their home and placed in foster care.  This was heartbreaking all around and resulted in significant pain and suffering on the part of B.D., as well as Keahiolalo, his wife and daughters . . . .

23.  Crossclaim Plaintiff's relationship with B.D. will be forever harmed as a consequence of these events.  Despite their very happy interactions and dealings when B.D. was part of his ohana and living in his home, her abrupt removal now has permanently impacted the future of their relationship.  In recent [guardian ad litem] proceedings, B.D. has allegedly said that she no longer wants any contact with Crossclaim Plaintiff.  If this is actually true, it is the result of these recent traumatic events and will forever harm any potential relationship between B.D. and her father and Crossclaim Plaintiff has been damaged in amounts to be proven at trial.

*Id.* at PageID # 1044.  Based on those factual allegations, Count I of the Amended Crossclaim alleges that:

27.  The Crossclaim Defendants' actions as set forth above violated rights to due process of law guaranteed to [Keahiolalo] by the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I of the Constitution of the State of Hawaii, and 42 U.S.C. Section 1983, inter alia.
                    . . . .
28.  As a direct and proximate result of the [Counterclaim] Defendants' aforesaid actions [Keahiolalo's] relationship with his daughter has been irreparably harmed and he already has suffered and will continue to suffer damages in amounts to be proven at trial.

*Id.* at PageID # 1045.

29

there is nothing indicating that Kaulukukui had anything to do with that January 3, 2020 removal.

And if the theory against Kaulukukui is based on Kaulukukui's actions or omissions when assisting Keahiolalo in removing B.D. from David's custody—i.e., that Keahiolalo was merely "acting at the direction and behest of the Crossclaim Defendants," ECF No. 129-1 at PageID # 1040—then the claim as currently pled lacks plausibility. It would mean that Keahiolalo himself did not know that he had no custody rights under the February 14, 2012 Stipulation and Order, or that Kaulukukui prepared the Family Court petition without his consent. Such a scenario would be completely inconsistent with other allegations of the FAC (which the court assumes as true for present purposes). At minimum, the Amended Counterclaim fails to establish causation—that is, it does not allege how Kaulukukui proximately caused any deprivation of Keahiolalo's constitutional rights. *See, e.g.*, *Spencer v. Peters*, 857 F.3d 789, 800 (9th Cir. 2017) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the

plaintiff must establish both causation-in-fact and proximate causation.") (internal quotation marks omitted).[16]

Accordingly, the court GRANTS Kaulukukui's Motion to Dismiss as to Count I of the Amended Crossclaim.  The court has real doubts about whether Keahiolalo can state a plausible § 1983 claim against Kaulukukui.  Nevertheless, the dismissal is without prejudice.  Keahiolalo is granted leave to amend to file a Second Amended Crossclaim to clarify, if he can, factual allegations against Kaulukukui that would state a valid § 1983 claim against her and that would withstand a qualified immunity challenge.

///

///

---

[16] Keahiolalo's Opposition argues that "Kaulukukui is an experienced Domestic Violence Interventions Coordinator . . . [who] prepared the TRO Petition and determined what to include and exclude based on her legal background."  ECF No. 148 at PageID # 1226.  He contends that "[i]f the granting or denial of the TRO was dependent upon including the facts set forth in the 2012 Stipulated Order, then it was incumbent upon Defendant Kaulukukui to include those facts."  *Id.*  "Defendant Keahiolao, as the victim and an untrained lay person, was justified in relying on her legal expertise for these purposes *as this is her job*."  *Id.* (emphasis in original). Elsewhere, he argues that "but for[] the acts and omissions of [David] and the other named Defendants, Keahiolalo would not be a party to this lawsuit."  ECF No. 167 at PageID # 1389.

No such factual allegations, however, are mentioned at all in the Amended Crossclaim, and this theory is not pled in it.  The Amended Crossclaim stands or falls on its (and the FAC's) allegations.  *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted).  That is, "this Court may not consider new allegations contained in a memorandum in opposition to a defendant's motion to dismiss."  *Ilae v. Tenn*, 2013 WL 4499386, at *15 n.20 (D. Haw. Aug. 20, 2013) (citing *Schneider*).

**2.      *A Right of Indemnification or Contribution Under 42 U.S.C. § 1983***

Kaulukukui also argues that § 1983 does not authorize contribution or indemnification, and that therefore Keahiolalo's claim for contribution and/or indemnification in Count III of the Amended Crossclaim should be dismissed as to any joint liability for a § 1983 violation.  ECF No. 136-1 at PageID ## 1135-36.

The court agrees that "[t]he Ninth Circuit has concluded that '[t]here is no federal right to indemnification provided in 42 U.S.C. § 1983.'"  *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015) (quoting *Allen v. City of L.A.*, 92 F.3d 842, 845 n.1 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997)).  And, similarly, there is no right of contribution under § 1983.  *See, e.g.*, *Cordova v. City of Albuquerque*, 816 F.3d 645, 659 (10th Cir. 2016) ("Comparative negligence is not applied in suits for violations of federal constitutional rights.") (quotation marks and citation omitted); *Mendez v. City of Gardena*, 2014 WL 12802930, at *3 (C.D. Cal. Nov. 4, 2014) ("Section 1983 neither expressly nor impliedly provides a right to contribution.") (citation omitted).

But these principles are academic as to Keahiolalo's Amended Crossclaim because Plaintiffs did not name Keahiolalo as a Defendant in the FAC's § 1983 claim.  *See* ECF No. 119 at PageID # 944 (naming only "Defendants

Bhanot [now Betts], Leskovic, Lathrop, Kaauwai-Herrod, Cho, St. Augustine, and Kaulukukui" in Plaintiffs' § 1983 claim).  That is, Keahiolalo—perhaps because he is not a government official—is not facing a § 1983 claim from Plaintiffs, and therefore Keahiolalo could not be asserting a right of contribution or indemnification under § 1983 against Kaulukukui in his Amended Crossclaim.  He is, however, apparently seeking contribution or indemnity as to the FAC's negligence claim.  In this regard, the Motion to Dismiss—which is only directed at § 1983—as to Count III of the Amended Crossclaim is DENIED.

## D.     Keahiolalo's Substantive Joinder

Finally, Keahiolalo filed a substantive joinder, ECF No. 160, in Kaulukukui's separate Motion to Dismiss Cross-Claimant Lathrop's Crossclaim. *See* ECF No. 158.  Lathrop's Crossclaim sought contribution and/or indemnification from Kaulukukui, Keahiolalo, and Iseri for any liability Lathrop might have to Plaintiffs as to the FAC.  *See* ECF No. 147-1.  Kaulukukui sought to dismiss that Crossclaim, arguing—as with her Motion to Dismiss Keahiolalo's Amended Crossclaim—that there is no right of contribution or indemnification for § 1983.  Kaulukukui also invoked the qualified privilege doctrine for public officials discussed above (*see, e.g.*, *Medeiros*, 55 Haw at 504, 522 P.2d at 1272), arguing that she did not act with "malice" and therefore could not be liable for

indemnification or contribution from Lathrop for any negligence.  *See* ECF No.

158 at PageID ## 1341-44.  Keahiolalo's joinder made no additional arguments,

but—as a substantive joinder—seeks the same relief on his behalf.  ECF No. 160.

On February 11, 2021, however, Lathrop dismissed by stipulation his

Crossclaim against Kaulukukui.  ECF No. 174.  (Lathrop's Crossclaim against

Keahiolalo and Iseri remains pending.  *Id.* at PageID # 1419).  This dismissal

rendered Kaulukukui's Motion to Dismiss, ECF No. 158, moot because—although

the Motion was not formally withdrawn—Kaulukukui no longer faces possible

contribution or indemnity from Lathrop.  And to the extent that Motion to Dismiss,

ECF No. 158, remains open on the court's docket, it is TERMINATED as MOOT

as to Kaukukukui.

Under Local Rule 7.7, "[u]nless otherwise ordered by the court, when

an underlying motion is withdrawn, any joinders are also treated as withdrawn."

Nevertheless, the court will address the merits of Keahiolalo's substantive joinder

because the results are clear.

First, to the extent Lathrop seeks contribution or indemnity against

Keahiolalo for any liability Lathrop may have under § 1983 to Plaintiffs as alleged

in the FAC, such claim is DISMISSED because there are no such rights under

§ 1983.  *See, e.g.*, *Allen*, 92 F.3d at 845 n.1 ("[T]here is no federal right to

indemnification provided in 42 U.S.C. § 1983."); *Cordova*, 816 F.3d at 659

("Comparative negligence is not applied in suits for violations of federal

constitutional rights."); *Mendez*, 2014 WL 12802930, at *3 ("Section 1983 neither

expressly nor impliedly provides a right to contribution.") (citation omitted).  To

that extent, the substantive joinder is GRANTED.[17]

   Second, Keahiolalo is not entitled to raise a "qualified privilege"

defense to a negligence claim (as Kaulukukui might).  This is because Keahiolalo

is a private individual, and a qualified privilege defense under state law only

applies to government officials. *See, e.g.*, *Towse*, 64 Haw. at 631, 647 P.2d at 702

("[N]on-judicial governmental officials, when acting in the performance of their

public duty, enjoy the protection of what has been termed a qualified or conditional

privilege.").  Accordingly, to the extent Keahiolalo seeks to dismiss Lathrop's

contribution or indemnity crossclaim for negligence on qualified privilege grounds,

the substantive joinder is DENIED.

   In short, the substantive joinder, ECF No. 160, is GRANTED in part

and DENIED in part.  Any claim for contribution or indemnity from Keahiolalo by

---

[17] Technically, because Plaintiffs did not name Keahiolalo as a co-Defendant in the FAC's § 1983 claim, any claim by Lathrop for contribution or indemnity against Keahiolalo would not be a "crossclaim"—it would be a third-party claim as to that specific relief.  In any event, however denominated, Lathrop may not seek contribution or indemnity from Keahiolalo for § 1983 liability.

Lathrop under § 1983 is DISMISSED.  Keahiolalo may not, however, assert a qualified privilege defense to any contribution or indemnity claim for negligence.

## IV.  CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Kaulukukui's Motion to Dismiss the First Amended Complaint, ECF No. 134;

(2) GRANTS in PART Kaulukukui's Motion to Dismiss Keahiolalo's Amended Crossclaim against Kaulukukui, ECF No. 136;

(3) TERMINATES as MOOT Kaulukukui's Motion to Dismiss Lathrop's Crossclaim against Kaulukukui, ECF No. 158; and

(4) GRANTS in PART Keahiolalo's Substantive Joinder in Kaulukukui's Motion to Dismiss Lathrop's Crossclaim, ECF No. 160.

IT IS SO ORDERED:

DATED:  Honolulu, Hawaii, March 31, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*David v. Betts et al.*, Civ. No. 20-00002 JMS-WRP, Order (1) Denying Defendant Kaulukukui's Motion to Dismiss First Amended Complaint, ECF No. 134; (2) Granting in Part Kaulukukui's Motion to Dismiss Keahiolalo's Amended Crossclaim, ECF No. 136; and (3) Granting in Part Keahiolalo's Substantive Joinder, ECF No. 160